**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,       )<br>    Plaintiff,       )<br>       )<br>v.       )<br>       )<br>EDWIN CALLIGAN,       )<br>    Defendant.       ) | CAUSE NO.: 1:17-CR-51-TLS-PRC |

**FINDINGS, REPORT, AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on Defendant's Motion to Suppress Physical Evidence and Incorporated Memorandum in Support Thereof [DE 53], filed by Defendant Edwin Calligan on January 23, 2018. Calligan requests that any physical evidence gathered from XXXX Encino Drive, Fort Wayne, Indiana, pursuant to the June 16, 2017 search warrant be suppressed because, he alleges, the search warrant was an anticipatory warrant and there was no probable cause to enter the residence when the triggering condition—delivery of the Target Parcel containing controlled substance 5F-ADB—did not occur.

On February 26, 2018, District Court Chief Judge Theresa L. Springmann entered an Order [DE 65] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). Finding that the search warrant was not an anticipatory warrant and that probable cause existed to support the search warrant without delivery of the Target Parcel, the Court recommends that the District Court deny the Motion to Suppress.

## PROCEDURAL BACKGROUND

Defendant Edwin Calligan is charged by way of a three count Superseding Indictment (ECF 35) charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), importing a controlled substance into the United States, in violation of 21 U.S.C. § 952, and attempted possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 846. The Indictment also includes a forfeiture allegation. Evidence supporting the Superseding Indictment was recovered from the residence at XXXX Encino Drive, Fort Wayne, Indiana, during the execution of a search warrant on June 20, 2017, which was authorized by the undersigned United States Magistrate Judge on June 16, 2017, in cause number 1:17-MJ-36.

On January 23, 2018, Defendant Edwin Calligan filed the instant Motion to Suppress, requesting than any physical evidence seized from XXXX Encino Drive, Fort Wayne, Indiana, be suppressed because the evidence was seized in violation of his Fourth Amendment rights. The Government filed a response on January 31, 2018, and Calligan filed a reply on February 5, 2018. The Court ordered a supplemental brief, which Calligan filed on February 12, 2018. On March 19, 2018, the Court held an evidentiary hearing on the motion, receiving testimony and other evidence, including Exhibits A and B. On May 29, 2018, Calligan filed a post-hearing brief, to which the Government filed a response on June 12, 2018. Calligan filed a reply brief on June 19, 2018.

## FACTUAL BACKGROUND

*1.  The Search Warrant Application and Supporting Affidavit*

On June 16, 2017, United States Immigration and Customs Enforcement Homeland Security Investigations Special Agent Jonathan Goehring presented a search warrant application for XXXX Encino Drive, Fort Wayne, Indiana, to the undersigned magistrate judge. (Def. Ex. A). The search

warrant application indicates that it is related to a violation of 21 U.S.C. §§ 841(a)(1), 844, and 856 for the offenses of "possession with intent to distribute a controlled substance; possession of controlled substances; and maintaining a drug involved premises." (Def. Ex. A). The application further indicates that the "basis for the search under Fed. R. Crim. P. 41(c)" is "evidence of a crime," "contraband, fruits of crime, or other items illegally possessed," and "property designed for use, intended for use, or used in committing a crime." *Id*.

Attachment B to the application lists the items the agent had reason to believe were presently concealed at the XXXX Encino Drive address, including 5F-ADB or other controlled substances; various itemized materials relating to the distribution of controlled substances; cash, currency, and records indicative of the distribution of controlled substances; items of personal property related to residency, occupancy, control, or ownership of the premises; firearms and other dangerous weapons, firearms magazines, and ammunition; communications devices; paraphernalia related to the distribution of controlled substances; contact/identification data relating to the distribution of controlled substances; and shipping documentation. *Id*.

In the affidavit attached to the search warrant application, the agent states that "there is probable cause to believe that evidence of violations of 21 U.S.C. §§ 841, 844, and 856 is located at XXXX Encino Drive, Fort Wayne, Indiana . . . ." (Ex. A, p. 3). Later, the agent again states, "I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 844, and 856 are presently located at the Subject Premises." *Id*. at p. 4.

The affidavit provides the following information. On June 5, 2017, the agent was contacted by the United States Customs and Border Protection, Tactical Analytical Unit, which had identified

a shipper from another country believed to be shipping large quantities of synthetic drugs to the United States. The agent was made aware of a specific parcel containing contraband from the suspected shipper that had entered the United States on May 31, 2017, and was informed of the name of the shipper, the address of the shipper, the manifest of the parcel, the declared value of the parcel, and the actual contents of the parcel identified as contraband during a border search of the parcel. *Id*. at p. 5. This parcel was not addressed to Defendant Calligan.

U.S. Customs and Border Protection had also identified a parcel from the same suspected shipper being shipped to "Edwin Calligan" at the XXXX Encino Drive, Fort Wayne, Indiana address with indicia identical to that of the May 31, 2017 parcel from the suspected shipper—the same name and address of the shipper, the same manifest, and the same declared value. The parcel addressed to Edward Calligan is identified throughout the affidavit as the "Target Parcel." A border search was conducted of the Target Parcel. *Id*. at 5-6. The affidavit describes the contents of the parcel, including how the contents were packaged, and states that the parcel contained approximately 1 kilogram of 5F-ADB, a Schedule I Controlled Substance. The agent states that 1 kilogram of 5F-ADB is capable of making 100 kilograms of finished product, which is indicative of a distribution amount and not personal use. *Id*. at 6.

The agent discusses over many paragraphs his knowledge of the manufacture, traffic, use, and effects of smokable synthetic cannabinoid products, including that 5F-ADB is one of the most potent synthetic cannabinoids. *Id*. at 6-8. Elsewhere, the agent sets out in detail his related training and experience as well as his knowledge of the practices of the importation and distribution of controlled substances. *Id*. at 1-3, 10-13.

4

The agent goes on to describe the cargo bill for the Target Parcel, which identifies the consignee of the Target Parcel as Edwin Calligan at the Encino Drive address; his preliminary investigation into Calligan, linking Calligan to the Encino Drive address, including that Calligan's girlfriend's mother owned the residence; and Calligan's criminal history of a conviction for attempted murder, criminal recklessness, and resisting law enforcement in 1999, a conviction for resisting law enforcement in 1997, and an arrest that was still pending for gun possession by a serious violent felon in 2016. *Id*. at 8-9.

The agent then states that Calligan received approximately 58 international parcels from 2015 to the present (June 2017), with most of the shipments delivered to the Encino Drive address and at least one delivered to a different address in Fort Wayne where Calligan's mother resides and which is listed as Calligan's residence in the charge against Calligan for serious violent felon in possession of a firearm. *Id*. at 10. Also, in the six weeks prior to the affidavit, there were four shipments from international shippers to Calligan at the Encino Drive residence.

The agent then explains that the Target Parcel and a sealed evidence bag containing the 5F-ADB were shipped to the Indianapolis office for an attempted controlled delivery to the Encino Drive residence. The agent states that, while he "believes there is currently sufficient probable cause for this issuance of this search warrant based on the aforementioned facts, it is the intention of your Affiant, working in connection with other law enforcement agents, to make a controlled delivery of the TARGET PARCEL containing the 5F-ADB. The TARGET PARCEL will be delivered to [XXXX] Encino Drive, Fort Wayne, Indiana 46816. The search warrant will be executed after the TARGET PARCEL has been delivered." *Id*. at 14.

2. *The Decision to Replace the 5F-ADB in the Target Parcel with Sham Material and the Delivery of the Target Parcel*

At some point, the agent became concerned for the safety of the officers serving the search warrant if the 5F-ADB was left in the Target Parcel because of Calligan's violent history. (Tr. pp. 11:21-25; 30:21-23). The agent explained that, if the Target Parcel was part of a controlled delivery, certain necessary methods would have been used on the package to avoid the risk of losing the drugs, and the agent was concerned that, if Calligan noticed the evidence of those methods once the package was in his control, Calligan might have become violent with the officers serving the warrant after the delivery. (Tr. pp. 11:21-12:12; 31:4-32:5). Thus, the agent made the decision to replace the 5F-ADB in the Target Parcel with all sham material and spoke with the United States Attorney's Office to confirm it "would be okay." (Tr. pp. 12:14-16; 25: 11-15; 26:14-18). After the conversation, the decision was made to use sham material. (Tr. pp. 12:17; 30:15-23). The agent did not make a new application for a search warrant.

The agent testified that he prepared the sham material, which was then placed in the Target Parcel, which was repackaged for delivery. (Tr. p. 33:1-18). The Target Parcel did not contain 5F-ADB when it was delivered to XXXX Encino Drive, Fort Wayne, Indiana. (Tr. p. 11:18-19). However, the agent testified that it was his original intention to deliver the Target Parcel with the drugs inside. (Tr. p. 30:21). He also testified that, if the package did not go inside the residence but went somewhere else, they would have followed the package and then returned later to execute the search warrant at XXXX Encino Drive. (Tr. pp. 37:12-38:10).

The search warrant return, filed with the Court, contains a separate piece of paper titled "Inventory of the Property Taken and Name of Any Person Seized." (Ex. B). The seventh item on the inventory list is "1 international parcel containing 1 kg of 5F-ADB." *Id*. The agent testified that

6

he made a mistake in preparing the return because the package did not contain 5F-ADB but that his intention was not to deceive. (Tr. pp. 13:14-14:3). When asked by the Court how the mistake happened, the agent took responsibility and apologized, indicated that he had prepared the return, and stated that he copied the inventory off of what the evidence person had prepared and that he did not believe that he had miscopied it. (Tr. p. 14:16-21).

## ANALYSIS

*1.    Standing*

In its pre-hearing response brief, the Government contested Calligan's standing to challenge the search warrant on the basis that Calligan had not offered any evidence that he has standing to object to the search of the XXXX Encino Drive property. However, following the hearing, the Government now concedes that Calligan has satisfied the requirements of standing.

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Cons. amend. IV. In order to bring a motion to suppress for a Fourth Amendment violation, a defendant must demonstrate that he "'has a legitimate expectation of privacy in the invaded place.'" *Minnesota v. Olson*, 495 U.S. 91, 95 (1990) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978) (citing *Katz v. United States*, 389 U.S. 347 (1967)). And, "[a] subjective expectation of privacy is legitimate if it is one that society is prepared to recognize as reasonable." *Id*. at 95-96 (internal quotation marks omitted) (quoting *Rakas*, 439 U.S. at 143-144, n. 12 (quoting *Katz*, 389 U.S. at 361)). In *Minnesota v. Olson*, the United States Supreme Court held that an overnight guest has a legitimate expectation of privacy in the host's home, recognizing that this is the "everyday expectations of privacy that we all share." *Id*. at 95-100.

At the hearing, Norma Simpson testified that she resides at XXXX Encino Drive, Fort Wayne, Indiana. (Tr. p. 42:11-12). She further testified that, on the day that her house was searched, Calligan was sleeping there. (Tr. pp. 42:15-43:1). Ms. Simpson also testified that Calligan slept at the Encino Drive residence three to four nights a week in June 2017. (Tr. p. 44:14-18). The United States Postal Inspection Service agent who made the controlled delivery of the Target Parcel to the Encino Drive residence testified that, when he handed the package to Calligan, it appeared that Calligan had just woken up. (Tr. p. 40:8-15). No evidence was presented at the hearing to dispute that Calligan was an overnight guest at the time the search warrant was executed. Therefore, because Calligan had an expectation of privacy in the Encino Drive residence, Calligan has standing to assert a violation of his Fourth Amendment rights in relation to the search warrant.

2.   *Probable Cause*

Turning to the merits of the motion, Calligan argues that all evidence seized by law enforcement on June 20, 2017, pursuant to the June 16, 2017 search warrant, was seized in violation of the Fourth Amendment because there was no probable cause for the search. Calligan asserts that the search warrant is an anticipatory warrant because there was no probable cause to enter the residence until the delivery of the Target Parcel containing 5F-ADB, the "triggering condition," and because service of the warrant was conditioned on the delivery of the Target Parcel containing the contraband. Calligan further reasons that, because the 5F-ADB was removed from the Target Parcel and replaced entirely with sham material before the controlled delivery of the Target Parcel, the contraband never entered the premises, the triggering condition never occurred, and, thus, there was never probable cause to support the search warrant.

8

However, the Court finds that the warrant was not conditioned on the delivery of the Target Parcel and the affidavit contained sufficient facts to find that probable cause existed without the delivery of 5F-ADB in the Target Parcel. As a result, the search warrant was not an anticipatory search warrant, the fact that no 5F-ADB was delivered with the Target Parcel does not change the finding of probable cause or void the warrant, and there was no Fourth Amendment violation.

"Anticipatory search warrants differ from other search warrants in that they are not supported by probable cause to believe that contraband exists at the premises to be searched at the time they are issued." *United States v. Dennis*, 115 F.3d 524, 528 (7th Cir. 1997); *see United States v. Grubbs*, 547 U.S. 90, 94 (2006) ("An anticipatory warrant is 'a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place.'"). The Seventh Circuit Court of Appeals further explained, "In fact, a court issues an anticipatory warrant with the knowledge that contraband does *not* presently exist at the location to be searched." *Dennis*, 115 F.3d at 528 (emphasis added) (citing *United States v. Leidner*, 99 F.3d 1423, 1425 (7th Cir. 1996)). Instead, the court must find that "probable cause exists to believe that contraband *will be* located at the premises to be searched *after* certain events transpire." *Id.* (emphasis added).

"Most anticipatory warrants subject their execution to some condition precedent other than the mere passage of time—a so-called 'triggering condition.'" *Grubbs*, 547 U.S. at 94. Often, the condition precedent is the delivery of contraband. *Dennis*, 115 F.3d at 528 (citing *United States v. Garcia*, 882 F.2d 699, 702 (2d Cir. 1989)). Notably, "[a]n anticipatory warrant need not state on its face the conditions precedent for its execution if the warrant affidavit contains 'clear, explicit and narrowly drawn' conditions and the executing officers actually satisfy those conditions before

9

executing the warrant." *Id.* at 529 (quoting *United States v. Moetamedi*, 46 F.3d 225, 228-29 (2d Cir. 1995) (citing *United States v. Tagbering*, 985 F.2d 946, 950 (8th Cir. 1993))); *see also Grubbs*, 547 U.S. at 98-99 (holding that the Fourth Amendment does not require that the triggering condition for an anticipatory search warrant be set forth in the warrant itself). And, the warrant affidavit containing the conditions need not be attached to the search warrant. *Id.* (citing *Moetamedi*, 46 F.3d at 228-29).

In this case, the agent specifically identified facts in the affidavit offered in support of probable cause to believe that there was then-currently evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 844, 856 at the Encino Drive residence, reiterating several times that he believed probable cause presently existed for the search warrant. Although it is the Court, and not the agent or the Government, that determines whether there is probable cause to issue the warrant, these statements by the agent along with the detailed offer of evidence indicate that it was not the agent's intention to seek an anticipatory search warrant.

However, Calligan asserts that the following language in the affidavit constitutes a "triggering condition," rendering the search warrant an anticipatory warrant:

> While your Affiant believes there is currently sufficient probable cause for this issuance of this search warrant based on the aforementioned facts, it is the intention of your Affiant, working in connection with other law enforcement agents, to make a controlled delivery of the TARGET PARCEL containing the 5F-ADB. The TARGET PARCEL will be delivered to [XXXX] Encino Drive, Fort Wayne, Indiana 46816. The search warrant will be executed after the TARGET PARCEL has been delivered.

(Ex. A, p. 14). This is not a triggering condition because the delivery of the Target Parcel is not a condition precedent to the service of the warrant. The plain language of the affidavit shows that the agent intended for the events to unfold in this order. But, nowhere in the affidavit does the agent say

10

that the warrant will only be executed upon delivery of the Target Parcel. Nor did the Court separately condition the execution of the warrant on the delivery of the Target Parcel containing 5F-ADB. Thus, there is no condition on the face of the search warrant or in the body of the affidavit that the warrant not be served unless the Target Parcel was delivered.

Moreover, the search warrant is not an anticipatory warrant because the affidavit contains sufficient facts to find that probable cause supported the search without the delivery of 5F-ADB in the Target Parcel. When the affidavit is the only evidence presented to the magistrate judge issuing the warrant, "'the warrant must stand or fall solely on the contents of the affidavit.'" *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002) (quoting *United States v. Roth*, 391 F.2d 507, 509 (7th Cir. 1967)); *see also United States v. Johnson*, 867 F.3d 737, 741 (7th Cir. 2017) (citing *United States v. Carson*, 582 F.3d 827, 831-32 (7th Cir. 2009)).[1] "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Grubbs*, 547 U.S. at 95 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "A search warrant affidavit establishes probable cause when it sets forth facts sufficient to induce a reasonable prudent person to believe that a search thereof will uncover evidence of a crime." *United States v. Gregory*, 795 F.3d 735, 741 (7th Cir. 2015) (quoting *United States v. Roth*, 201 F.2d 888, 892 (7th Cir. 2000) (omitting citation and internal quotation marks)).

In other words, "[p]robable cause exists when it is reasonably believed that the evidence sought will aid in a particular apprehension or conviction for a particular offense and that the evidence is located in the place to be searched. Probable cause denotes more than mere suspicion,

---

[1] In its post-hearing response brief, the Government points to the agent's statement in the affidavit that "[t]his affidavit is not intended to and does not set forth each and every fact and matter known by me or the government." (Ex. A., p. 3). Because the Court looks to the four corners of the affidavit to determine probable cause, this statement adds nothing to the Court's analysis.

11

but does not require certainty." *United States v. Anton*, 633 F.2d 1252, 1254 (7th Cir.1980). Rather, "probable cause is far short of certainty—it requires only a probability or substantial chance of criminal activity, not an actual showing of such activity, and not a probability that exceeds 50 percent (more likely than not), either." *United States v Reichling*, 781 F.3d 883, 887 (7th Cir. 2015) (quoting *United States v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012)). The United States Supreme Court has adopted a "totality of the circumstances" standard for the sufficiency of the allegations supporting probable cause. *See United States v. Hancock*, 844 F.3d 702, 708 (7th Cir. 2016) (quoting *United States v. Mullins*, 803 F.3d 858, 861 (7th Cir. 2015)); *Jones*, 208 F.3d at 608 (quoting *Gates*, 462 U.S. at 238-39). The task of the magistrate judge issuing the warrant "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

The Court finds that the affidavit submitted with the search warrant application presents sufficient information to reasonably conclude that evidence of possession, of possession with the intent to distribute controlled substances, or of maintaining a drug involved premises was then-presently located and would be found at the Encino Drive residence without the delivery of the Target Parcel containing 5F-ADB. The affidavit provides that approximately 58 international packages had been sent to Calligan from 2015 to June 2017 at the Encino Drive address with four international packages delivered in the six weeks immediately preceding the search warrant application. Although the affidavit does not identify the shipper or contents of those 58 packages or that any of the 58 packages were from a suspected shipper of controlled substances, the affidavit states that the Target Parcel addressed to Calligan at the Encino Drive address containing 1 kilogram

12

of 5F-ADB was from the same suspected international shipper who had shipped a package containing a different contraband substance to another address in the United States in the same time frame. Both parcels had identical sender information (name and address) as well as an identical manifest and declared value of the parcel.

The affidavit links Calligan to the Encino Drive address in that his girlfriend's mother owned the property, his girlfriend told the police in December 2016 that she lived on Encino Drive, photos posted on social media showed Calligan with his girlfriend and a child, and a car known to be driven by Calligan was parked in the driveway on Encino Drive in June 2017. The Target Parcel addressed to Calligan at the Encino Drive address contained a kilogram of 5F-ADB, which the agent states in the affidavit is capable of making 100 kilograms of finished product, indicative of a distribution amount and not personal use.

The Court finds that, based on the totality of the facts presented in the affidavit, there was a fair probability that the items listed in Attachment B to the search warrant application related to the listed crimes were then-currently present at XXXX Encino Drive, Fort Wayne, and would be found there. It was not necessary for the Target Parcel containing the 5F-ADB to be delivered to the residence to satisfy the requirements of probable cause. In his brief, Calligan questions why the controlled delivery of the Target Parcel containing the 5F-ADB was planned if there was sufficient probable cause without the delivery. (ECF 70, p. 7). At the hearing, the agent explained that letting the controlled delivery of the parcel play out allows the agent to see whether the parcel is, in fact, going into the residence because sometimes the parcel is picked up by someone else and goes somewhere else, in which case the agent would have followed the package and then returned later to execute the warrant at the Encino Drive residence. (Tr. pp. 22:3-11; 38: 3-9). The agent also

13

believes that serving a warrant once the defendant has what he believes to be a package full of drugs in his possession inside the residence is a strong incentive for the defendant to cooperate or even to confess. (Tr. p. 22:12-15). Based on the finding of probable cause, the Court recommends that the District Court deny the Motion to Suppress.[2]

As a final matter, the Court recognizes that, throughout his post-hearing briefing, Calligan asserts that the agent had a reckless disregard for the truth in relation to events that occurred after the search warrant was issued and executed. (ECF 70, pp. 1, 5, 8, 9, 12); (ECF 77, pp. 5, 6).[3] However, as explained above, the determination of probable cause requires the Court to consider the information contained within the four corners of the affidavit submitted with the application. In this case, probable cause existed without the delivery of the Target Parcel, which means that the search warrant was not an anticipatory warrant, and the agent's subsequent actions do not void the search warrant. Nevertheless, the Court is concerned by three aspects of these events identified by Calligan in his briefs, worthy of noting here.

First, the agent testified that he decided to remove all of the 5F-ADB from inside the Target Parcel and replace it with a sham substance for the controlled delivery based on Calligan's violent criminal history and the agent's concern for the safety of the officers serving the search warrant. (Tr. pp. 11:21-12: 25). While a valid concern, the agent, who testified that he had overseen over a

---

[2] Because there was probable cause to support the search warrant, the Court need not address the alternative arguments of good faith and inevitable discovery raised by the Government in its response brief.

[3] Calligan has not moved to suppress on the basis that information was included in the affidavit with a reckless disregard for the truth at the time the warrant was sought. *See Franks v. Delaware*, 438 U.S. 154, 171-72 (1978). However, even if Calligan were attempting to prove and had offered facts to prove that information in the affidavit was included with a reckless disregard for the truth, the result would nevertheless stay the same because "sufficient allegations existed in the affidavit warranting the search irrespective of the affiant's alleged errors." *United States v. Hancock*, 844 F.3d 702, 708 (7th Cir. 2016) (quoting *United States v. Mullins*, 803 F.3d 858, 861-62 (7th Cir. 2015)). As set forth above, the affidavit contained sufficient information to support a finding of probable cause for the search without the delivery of the Target Parcel.

14

hundred controlled deliveries, included Calligan's criminal history in the affidavit; therefore, it is unclear why the concern did not arise at the time the search warrant affidavit and application were prepared. Second, even though the agent believed that there was probable cause for the search without the delivery of the Target Parcel, the Court—not law enforcement—determines probable cause, *see Johnson v. United States*, 333 U.S. 10, 14 (1948), and it appears that the agent had sufficient time to return to the magistrate judge to present the change in circumstances regarding the removal of the 5F-ADB from the Target Parcel and to obtain a search warrant based on the changed facts. Third, the search warrant return, dated June 20, 2017, includes on the numbered inventory list "1 international parcel containing 1 kg of 5F-ADB." (Ex. B). Recognizing that the agent made a mistake and took responsibility for his mistake at the hearing, the Court is nevertheless concerned that this error occurred in light of the agent's preparation of the search warrant affidavit, decision to replace all the 5F-ADB with sham, and preparation of the sham substance.

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court **DENY** Defendant's Motion to Suppress Physical Evidence and Incorporated Memorandum in Support Thereof [DE 53].

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor*

*Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 28th day of June, 2018.

     s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT