UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Cause No. 1:17-CR-51-HAB |
| | ) |
| EDWIN CALLIGAN | ) |

**OPINION AND ORDER**

On January 23, 2020, Defendant Edwin Calligan was found guilty by a jury of all three counts in a superseding indictment charging him, generally, with importing chemical compounds for the purposes of producing synthetic marijuana. The United States Probation Office prepared a draft presentence investigation report (ECF No. 185), which calculated Calligan's offense level as follows:

| | | |
|---|---|---|
| 64. | **Base Offense Level:** The guideline for a violation of 21 U.S.C. §§ 952 and 846 is USSG §2D1.1. The base offense level is 30 as the offense involved at least 1,000 kilograms but less than 3,000 kilograms of Converted Drug Weight. USSG §§2D1.1(a)(5) and (c)(5). | **30** |
| 65. | **Specific Offense Characteristics:** If a dangerous weapon (including a firearm) was possessed, increase by 2 levels. USSG §2D1.1(b)(1) | **+2** |
| 66. | **Specific Offense Characteristics:** If the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase by 2 levels. USSG §2D1.1(b)(12) | **+2** |
| 67. | **Victim Related Adjustment:** None. | **0** |
| 68. | **Adjustment for Role in the Offense:** None. | **0** |
| 69. | **Adjustment for Obstruction of Justice:** The defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to the defendant's offense of conviction and any relevant conduct; or a closely related offense; therefore, two levels are added. USSG §3C1.1. | **+2** |
| 70. | **Adjusted Offense Level (Subtotal):** | **36** |
| 71. | **Chapter Four Enhancement:** None. | **0** |
| 72. | **Acceptance of Responsibility:** As of completion of the presentence investigation, the defendant has not clearly demonstrated acceptance of responsibility for the offense. USSG §3E1.1. | **0** |
| 73. | **Total Offense Level:** | **36** |

Calligan has since challenged every part of this calculation; he asserts that the drug weight used to calculate the base offense is overstated, and that none of the enhancements apply. (*See* ECF No. 188). For its part, the Government has no quarrel with the Probation Office's calculations and has submitted a brief and evidence in support of those calculations. (ECF No. 196). The Court has reviewed the parties' arguments, the submitted evidence, the evidence introduced at Calligan's trial, and the evidence presented at Calligan's March 19, 2018, probable cause hearing. On the basis of that record, the Court makes the following findings with respect to Calligan's objections.

**A.      Evidentiary Standard**

Generally, the law requires a sentencing court to find by a preponderance of the evidence the facts that support a sentencing enhancement. *United States v. Colon*, 919 F.3d 510, 517 (7th Cir. 2019). This same standard applies in determining the quantity of drugs attributable to the defendant. *United States v. Campuzano-Benitez*, 910 F.3d 982, 986–87 (7th Cir. 2018).

**B.      Who Owns the Money?**

As we will see below, so much of Calligan's objections rise and fall on the ownership of the approximately $75,000.00 seized from a safe at the Encino Drive address. Calligan, his girlfriend, Tiffany Simpson, and her mother, Norma Simpson, all claim that the money represents Tiffany and Norma's life savings, accumulated over the course of their working lives. This claim has been made on several occasions in multiple forums: Tiffany has made the claim in sworn testimony and in a sworn written statement to Homeland Security, Calligan made the claim during his sworn trial testimony, and the claim is made again in Calligan's objection to the presentence investigation report.

The Government does not provide any evidence tracing the money to Calligan. Instead, it attempts to convince the Court that the claims by Calligan and the Simpsons are not credible. For

the most part, the Government does this by presenting evidence that both Norma and Tiffany lived at addresses other than Encino Drive. The Government specifically points to what it calls "contradicting statements" by Tiffany regarding her residence.

In the Court's view, neither side has presented a particularly compelling case regarding the ownership of the money. The Court struggles to see why the Government characterizes Tiffany's statements regarding her residence as "contradicting." The Government notes that Tiffany lists one address on her 2015 Indiana tax return as her "present address" but lists a different address as her residence during all of 2015 for the purposes of claiming a renter's deduction. (ECF No. 196 at 4–5; ECF No. 196-2). These two statements are not necessarily in conflict. As everyone knows, tax returns are generally filed retrospectively; a 2015 tax return would not be filed until 2016 at the earliest. It is certainly possible, then, that Tiffany could have lived at one residence throughout 2015 but lived at a different residence when her 2015 tax returns were filed. The Court finds nothing inconsistent with Tiffany's self-reported residential history.

The Court ultimately finds two pieces of evidence to be compelling evidence that the money did not belong to Tiffany and/or Norma. The first is Tiffany's earning statement from GM. It is not impossible, or even improbable, that an individual would keep their life savings in cash. A 2017 survey by the Federal Deposit Insurance Corporation ("FDIC") found that more than 25% of American households were either "unbanked," meaning no one in the household had a checking or savings account, or were "underbanked," meaning that they have a bank account but utilized "alternative financial services" such as payday loans, money orders, and check cashing establishments. Federal Deposit Insurance Corporation, *FDIC National Survey of Unbanked and Underbanked Households*, at 1 (2018), https://www.fdic.gov/householdsurvey/2017/2017execsumm.pdf. More than 20 million Americans had no access to a bank account, with

the highest percentage of those being African American. *Id*. at 1, 3. For these individuals, keeping savings in cash is their only option.

While we know nothing about Norma's banking situation, we do know that Tiffany was not unbanked during this period. Her GM earnings were direct deposited into a bank account. (ECF No. 196-4). So was her 2016 federal tax refund. (ECF No. 196-3 at 2). Given her ready access to a bank account, it would make little sense for Tiffany to have entrusted her life savings to a small safe in a residence.

That proposition makes even less sense considering the second piece of evidence: the 2017 Encino Drive lease. Under the terms of that lease, Calligan was the sole tenant at the Encino Drive address from March 1, 2017, until his arrest. (ECF No. 196-5). Norma listed her address as 4422 Casa Verde Drive in Fort Wayne, the same address used by Tiffany on her 2016 tax return and her GM earning statement. While an individual may choose to keep their life savings in a safe, the Court finds it incredibly unlikely that they would do so when the safe was in another individual's residence. This is especially true where, as here, that individual has a long criminal history. If Tiffany and Norma were going to keep their life savings in cash, it is beyond belief that they would entrust that cash to the stewardship of Calligan.

At the end of the day, the Court finds it more probable that the large amount of money found at the Encino Drive address, the same address to which Calligan had delivered large amounts of controlled substances, was the fruit of the illegal sale of those controlled substances rather than the life savings of two individuals who did not live there. *See Concrete Pipe and Products of Cal., Inc. v. Constr. Laborers Pension Tr. for Southern Cal.*, 508 U.S. 602, 622 (1993) (defining preponderance of the evidence). Accordingly, the Court will treat that money as drug proceeds in evaluating Calligan's objections to the presentence investigation report.

## C.     Possession of a Dangerous Weapon

The U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) provides, "[i]f a dangerous weapon (including a firearm) was possessed, increase by 2 levels." U.S.S.G. § 2D1.1(b)(1). The commentary to this section states that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id*. § 2D1.1(b)(1) Application Note 3. The enhancement accounts for the increased danger to law enforcement presented when drug dealers and traffickers arm themselves. *United States v. Cashman*, 216 F.3d 582, 587 (7th Cir. 2000).

Under § 2D1.1(b)(1), the government must first establish by a preponderance of the evidence that the defendant possessed a weapon in a place where drugs were present, before the burden of persuasion shifts to the defendant to demonstrate that it was clearly improbable that the weapon was connected with the drug offense. *United States v. Grimm*, 170 F.3d 760, 767 (7th Cir. 1999). The government may meet its burden by showing actual or constructive possession. *See United States v. Wetwattana*, 94 F.3d 280, 283 (7th Cir. 1996). Possession of an object, whether actual or constructive, exists when a person exercises control over the object. *Id*. at 283–84 and n. 4 (citing *United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir. 1990)).

Possession of the firearm by Calligan has already been determined by the jury when they convicted him of being a felon in possession of a firearm. The Court finds, by a preponderance of the evidence, that drugs were also present in the home. Calligan admitted as much in his trial testimony when he testified that he accepted the controlled substance deliveries and then took them to an individual named "Slim."[1] Even if one is not inclined to credit the existence of Slim, the

---

[1] The Court would note the inherent contradiction in Calligan asking the Court to credit his "Slim" testimony while arguing, on the same page of his sentencing memorandum, that perhaps someone else came and picked up the packages of controlled substances. (ECF No. 193 at 5).

5

Court has no trouble concluding, on the basis of the sheer number of deliveries to Encino Drive alone, that at some point the firearm and controlled substances were in the same residence.

The only remaining question is whether Calligan has demonstrated that it was "clearly improbable" that the gun was connected with his drug offense. The Court finds that he has not. While Calligan is correct in noting that no drugs were ever found in the Encino Drive residence, it is also true that the firearm was found in the same room as the nearly $75,000.00 in what the Court has concluded to be drug proceeds[2]. This fact is sufficient to defeat any contention that it is clearly improbable that the firearm was connected with Calligan's drug operation. *United States v. Thurman*, 889 F.3d 356, 372 (7th Cir. 2018); *United States v. Are*, 590 F.3d 499, 527–28 (7th Cir. 2009). The Probation Office accurately assessed an enhancement under USSG § 2D1.1(b)(1), and Calligan's objection to that enhancement is OVERRULED.

**D.     Obstruction of Justice**

Section 3C1.1 of the Sentencing Guidelines provides for a two-level enhancement if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1(A). Committing perjury is specifically listed as an example of conduct that warrants such an enhancement. *See* U.S.S.G. § 3C1.1 Application Note 4(b). To find obstruction based on perjury, the sentencing court must find that the defendant willfully made misrepresentations under oath that were relevant to the prosecution, and specifically intended to

---

[2] For his part, Calligan claims that the money cannot be drug proceeds because of the relatively short period of time that 5F-ADB was illegal prior to the execution of the search warrant. (ECF No. 198 at 2). If the evidence demonstrated that 5F-ADB was the only controlled substance that Calligan had imported, then this argument might carry some weight. But that is not what the evidence showed. Emails set forth in the presentence investigation report demonstrate that Calligan was importing controlled substances, including abchiminaca ("ABC") and 5fur144 as far back as April 2016. (ECF No. 189 at 10). Any proceeds from the sale of these substances would be just as ill-gotten as proceeds from the sale of 5F-ADB.

obstruct justice. *United States v. Dunnigan*, 507 U.S. 87, 94 (1993); *United States v. Jackson*, 300 F.3d 740, 749 (7th Cir. 2002).

The problem for the Court in evaluating the proposed enhancement under Section 3C1.1 is that the Government has not identified *any* specific statement that it believes constitutes perjury. Instead, the Government speaks in generalities, referring to Calligan's "testimony to the Court about his connection to the Encino Drive residence" and "[t]he statements made during the probable cause hearing." (ECF No. 196 at 8–9). These are not statements or representations; they are broad categories of testimony. Such broad categorization makes it impossible for the Court to "identify which of [Calligan's] statements it considered to be lies and why." *United States v. McGiffen*, 267 F.3d 581, 592 (7th Cir. 2001).

Even where the Government provides more specific examples of allegedly perjured testimony, it still fails to put those statements in in context. This missing context is important. Literally true answers, even if non-responsive or misleading, are not perjurious. *United States v. Rahman*, 805 F.3d 822, 838 (7th Cir. 2015). Because of this, the precise question and precise answer are of crucial importance. This is particularly true with respect to Calligan's statements regarding his residence[3] since, as discussed above with respect to Tiffany, the precise question asked and the time frames referenced in the question can radically change the truthfulness of any particular answer.

Without any contextual evidence, the Court cannot make the necessary findings to support an enhancement under Section 3C1.1(A). The Court cannot make determinations as to all the

---

[3] Context is arguably less important with respect to Calligan's testimony about Slim, as that testimony did not turn on timing or other question-specific issues. However, the Court does not find, by a preponderance of the evidence, that this statement was false. Given the lack of any drug paraphernalia at the Encino Drive home, it is quite likely that Calligan did take the imported substance to a different location, and it is not unlikely that another individual was involved in the production. The Court also questions the materiality of the Slim testimony. The criminal conduct was complete when Calligan imported the illegal substances into the country. *See* 21 U.S.C. § 952. What he did after receiving the substances was irrelevant to the prosecution.

factual predicates necessary for a finding of perjury, including false testimony, materiality, and willful intent. *United States v. Johnson*, 612 F.3d 889, 893 (7th Cir. 2010). Instead, the Court could only make broad findings as to Calligan's truthfulness which would not withstand appellate review. *McGiffen*, supra. As such, the enhancement cannot stand. Calligan's objection to the enhancement under USSG § 3C1.1 is SUSTAINED.

**E.     Maintaining a Premises**

The guidelines provide for a two-level sentence enhancement "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). This includes "storage of a controlled substance for the purpose of distribution." *Id*. at Application Note 17. The application notes clarify that "[m]anufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." *Id*.

"[T]o determine whether drug distribution was a primary or incidental use, the district courts are not required to apply a simple balancing test that compares the frequency of unlawful activity at the residence with the frequency of lawful uses." *United States v. Contreras*, 874 F.3d 280, 284 (7th Cir. 2017) (per curiam). That is because "such a test would immunize every family home that is also used for drug distribution from being deemed an illegally maintained 'premises,'" since "the amount of lawful activity in a home is all but certain to exceed the amount of illegal activity." *Id*. Instead, "the sentencing court should focus on both the frequency and significance of the illicit activities." *Id*. "Neither a specific frequency nor a particular significance automatically warrants applying the enhancement." *United States v. Sanchez*, 710 F.3d 724, 731 (7th Cir. 2013), vacated on other grounds, *Sanchez v. United States*, 571 U.S. 801 (2013). "Rather, we consider the

8

two in tandem and determine whether the prohibited purpose can be fairly described as a 'primary or principal' use of the premises." *Id*. Factors relevant to this analysis include "quantities dealt, customer interactions, keeping 'tools of the trade' and business records, and accepting payment." *Contreras*, 874 F.3d at 284.

In its brief to this Court, the Government argues:

> The evidence shows that the Defendant rented the premises of Encino and/or exercised control over it and for a sustained period of time used the premises as his base of operations for his importation operation. That is the address he used for the delivery of 5FADB, damania leave, proceeds of his operation and his "recipe" for the production of his end product.

(ECF No. 196 at 7). The Court agrees with this analysis but finds it largely irrelevant. Section 2D1.1(b)(12) does not impose an enhancement for maintaining a premises for the purposes of importing a substance. Instead, "manufacturing or distributing" are the relevant inquiries.

When the Court applies the considerations set forth in *Contreras* it finds little basis to impose the enhancement. There is no evidence whatsoever that Calligan dealt drugs, met customers, kept tools of the trade, or accepted payment for drugs at the Encino Drive home. Calligan did keep his recipe and one page of cryptic writing that could be interpreted as a ledger at the home, but the Court cannot find that one notebook, in and of itself, is sufficient to support a two-level enhancement.

The closest case the Court can find to the facts of this case is *United States v. Sanchez*, 810 F.3d 494 (7th Cir. 2016). There, the Seventh Circuit upheld the imposition of an enhancement under § 2D1.1(b)(12) where the defendant "received large drug deliveries every few weeks." *Id*. at 497. However, the defendant in *Sanchez* also "was paid a large sum for storage, and controlled access to the drugs" while they were at the home. *Id*. Those factors are missing here.

With no evidence that Calligan stored, manufactured, or distributed controlled substances at the Encino Drive home, the Court cannot conclude that § 2D1.1(b)(12) applies here. Whomever was living at the home, it was clearly being used as a residence based on the evidence provided at trial. As such, the Court cannot find that the "frequency and significance of the illicit activity" was sufficient to make manufacturing or distributing controlled substances a primary or principal use of the residence. Calligan's objection to the two-level enhancement under USSG § 2D1.1(b)(12) is SUSTAINED.

**F.     Drug Quantity**

Finally, Calligan objects to the drug quantity used in calculating his base offense level. Calligan argues that "only the packages that have confirmed lab test result [sic] should be considered in determining the base offense level." (ECF No. 188 at 2). In response, the Probation Officer found:

> Defense counsel's analysis seems to be based solely on the contention that for sentencing purposes, the Court can only consider the drugs that were seized and lab tested; however, counsel is not considering relevant conduct under USSG §1B1.3(a)(2) or USSG §2D1.1, comment. (n.5), nor is counsel considering the fact that at sentencing, the standard of proof is preponderance of the evidence. The protracted time period of the defendant's conduct as demonstrated through several emails between the defendant and Lilly, to include clear statements that both individuals were aware that the defendant was ordering controlled substances, including, but not limited to 5F-ADB, clearly demonstrates that the drug seizures do not reflect the scale of the offense, regardless of testing. Moreover, Lilly confirmed shipment of orders and the defendant confirmed receipt of the packages he ordered to include replacement orders. Lack of physical evidence that the defendant received the packages does not negate the fact that the defendant was attempting to import a controlled substance into the United States. It should also be noted that in addition to the three packages referenced above, the other three seized packages field tested positive for the presence of 5F-ADB. Counsel is also ignoring the fact that there was $73,459.00 located in a safe in the master bedroom at 4218 Encino Drive and that the defendant told agents that the key to the safe was located in a sock in the top drawer of the dresser. Furthermore, the defendant had multiple packages delivered to 4218 Encino Drive. More to the point, on December 14, 2016, the defendant sent Lilly an email providing his new mailing address as 4218 Encino Drive.

(ECF No. 189 at 17). The Court agrees with the Probation Officer's findings and adopts them as its own. Accordingly, Calligan's objection to the drug quantity is OVERRULED.

**E.     Conclusion**

For the foregoing reasons, Calligan's objections to the two-level enhancements under USSG §§ 2D1.1(b)(12) and 3C1.1 are SUSTAINED. Calligan's objections to the drug quantity and the two-level enhancement under USSG § 2D1.1(b)(1) are OVERRULED. The Probation Officer is DIRECTED to prepare a revised presentence investigation report consistent with this Order.

SO ORDERED on May 12, 2020.

        s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT